UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| E.G.M., | CASE NO. C26-0744-KKE |
|           Petitioner(s), | ORDER GRANTING HABEAS PETITION |
|    v. | |
| BRUCE SCOTT, et al., | |
|           Respondent(s). | |

After Petitioner was arrested and detained by United States Immigration and Customs Enforcement ("ICE") agents, he filed a petition for a writ of habeas corpus under 28 U.SC. § 2241. Dkt. No. 1.  His petition argues that his detention is unlawful because it violates his constitutional right to procedural due process. *Id*. at 9.  The Government[1] filed its return, arguing that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b). The parties also provided supplemental briefing on the petition, in response to the Court's questions. *See* Dkt. Nos. 8, 9, 10, 11.

For the following reasons, the Court finds that Petitioner's detention is unlawful and will grant the petition and order the release of Petitioner.

---

[1] In this order, the Court refers to the federal Respondents—U.S. Department of Homeland Security ("DHS"), the DHS Secretary, Seattle's ICE Field Office Director Drew Bostock, and ICE's Acting Director Todd Lyons—as "the Government."

ORDER GRANTING HABEAS PETITION - 1

## I.    BACKGROUND

Petitioner is a native and citizen of Venezuela who entered the United States without inspection in October 2022.  Dkt. No. 5 ¶ 3.  He was initially detained and then released due to space constraints.  Dkt. No. 5 ¶ 3; Dkt. No. 6-1 at 3, Dkt. No. 6-2.  The Government charged Petitioner with removability under Section 212(a)(6)(A)(i) of the Immigration and Nationality Act and mailed him a notice to appear.  Dkt. No. 6-3 at 3, Dkt. No. 6-4.  The Government issued an order of release on recognizance in August 2023, requiring Petitioner to appear for hearings and interviews.  Dkt. No. 6-5.

Petitioner failed to appear at an immigration court hearing on November 17, 2025, and was ordered removed to Venezuela *in absentia* that day.  Dkt. No. 6-6.  Citing that order of removal, officers arrested Petitioner when he arrived at a scheduled ICE check-in on December 18, 2025.  Dkt. Nos. 6-1, 6-7.  Petitioner was transported that day to the Northwest ICE Processing Center in Tacoma, Washington, where he remains detained.  Dkt. No. 5 ¶¶ 6, 11.

On January 7, 2026, Petitioner filed a motion to reopen his immigration proceedings, and the motion was granted on January 20, 2026.  Dkt. No. 5 ¶¶ 7–8, Dkt. No. 6-9.  The immigration court also held a bond hearing at Petitioner's request on March 4, 2026, and found that it lacked jurisdiction to set bond because Petitioner was subject to mandatory detention, and that in the alternative bond was denied because Petitioner is a flight risk.  Dkt. No. 6-10.

Petitioner filed a petition for a writ of habeas corpus requesting immediate release from detention without any supervision conditions, and a permanent injunction against his re-detention during the pendency of his removal proceedings "absent written notice and a hearing prior to re-detention where Respondents must prove by clear and convincing evidence that [] Petitioner is a flight risk or danger to the community and that no alternatives to detention would mitigate those risks[.]"  Dkt. No. 1 at 18.  For the following reasons, the Court grants the habeas petition.

## II.   ANALYSIS

Federal courts have authority to grant writs of habeas corpus to an individual in custody if such custody is a "violation of the Constitution or laws or treaties of the United States[.]"  28 U.S.C. § 2241(c)(3).  In this case, Petitioner contends that his arrest and detention violate, among other things, the Due Process Clause of the Fifth Amendment to the United States Constitution, which prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]"  U.S. CONST. AMEND. V.  The right to due process extends to "all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent."  *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment."  *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).  "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"  *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).  Determining whether an administrative procedure provides the process constitutionally due

> generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335.

In *Rodriguez Diaz v. Garland*, the Ninth Circuit assumed without deciding that *Mathews*' three-part test applies in "the immigration detention context."  53 F.4th 1189, 1206–07 (9th Cir. 2022).  The Court will consider each *Mathews* factor in turn to determine whether Petitioner received the process appropriate to his circumstances.

ORDER GRANTING HABEAS PETITION - 3

**A.      Petitioner Was Subject to 8 U.S.C. § 1226(a) When He Was Re-Detained.**

To determine whether Petitioner's re-detention complies with due process, the Court must first determine the statutory authority governing Petitioner's re-detention. *See Prieto-Romero v. Clark*, 534 F.3d 1053, 1057 (9th Cir. 2008) ("Where an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention.").

Petitioner asserts his re-detention is governed by 8 U.S.C. § 1226(a) because he is a noncitizen awaiting a decision on whether he should be removed, while the Government asserts he is subject to mandatory detention under 8 U.S.C. § 1225(b)(2) as an "applicant for admission." Dkt. No. 4 at 3, Dkt. No. 11 at 4. The Government also argues that even if the Court disagrees with the Government's interpretation of 8 U.S.C. § 1225(b)(2), Petitioner is now lawfully detained consistent with the immigration judge's order denying bond on the alternate grounds that Petitioner is a flight risk. Dkt. No. 4 at 4.

In *Jennings v. Rodriguez*, the Supreme Court explained that "[r]ead most naturally, § 1225(b)(1) … mandate[s] detention of applicants for admission until certain proceedings have concluded." 583 U.S. at 297. Under § 1225(b)(1), "applicants for admission" "are detained for 'further consideration of the application for asylum[.]'" *Id.* (quoting 8 U.S.C. §§ 1225(b)(1)). However, "[o]nce those proceedings end, detention under § 1225(b) must end as well." *Id.* Three years later, analyzing the relationship between the provisions of the INA, the Supreme Court observed that the INA's structure generally tracks "the sequential steps of the removal process." *Johnson v. Guzman Chavez*, 594 U.S. 523, 543 (2021). While "Sections 1221 to 1224 address the arrival" of noncitizens, "Section 1225 provides instructions for inspecting [noncitizens], expediting the removal of some, and referring others for a removal hearing … And § 1231 explains what to do if the [noncitizen] is ordered removed." *Id.* at 543–44.

ORDER GRANTING HABEAS PETITION - 4

Under § 1231(a), "[w]hen [a noncitizen] has been found to be unlawfully present in the United States and a final order of removal has been entered, the Government ordinarily secures the [noncitizen's] removal during a subsequent 90-day statutory 'removal period,' during which time the [noncitizen] normally is held in custody." *Zadvydas v. Davis*, 533 U.S. 678, 682 (2001); *see also* 8 U.S.C. § 1231(a)(2)(A) (stating that during the 90-day removal period, the government "shall detain" the noncitizen"). Although 8 C.F.R. § 1241(e) provides that an *in absentia* removal order is final on the date it is entered by an immigration judge, the Ninth Circuit has held that an *in absentia* removal order becomes final either 180 days from the date the *in absentia* order is issued, or if a timely motion to reopen is filed and denied, then the date the Board of Immigration Appeals affirms the denial of the motion to reopen. *Cui v. Garland*, 13 F.4th 991, 996 (9th Cir. 2021).

In this case, at the time that Petitioner was re-detained in December 2025, it is undisputed that he had failed to appear for an immigration court hearing and had been ordered removed via an *in absentia* order. *See* Dkt. No. 10 at 1–2. But because, under *Cui*, that order was not yet final and could have been appealed, it did not provide a justification for detaining Petitioner at his ICE check-in. *See Ledesma Gonzalez v. Bostock*, 808 F. Supp. 3d 1189, 1200 (W.D. Wash. 2025) (holding that "[a] non-final, appealable order cannot serve as the basis for revocation" of a release order). And notably, the Government's briefing does not contend that the removal order justified Petitioner's detention, although documents submitted along with the Government's briefing cites the removal order as the reason for Petitioner's arrest and detention. *Compare* Dkt. No. 10 at 1–2 *with* Dkt. No. 5 ¶ 6, Dkt. No. 6-7 at 3.

In any event, the Government's briefing argues that Petitioner is subject to mandatory detention under Section 1225(b)(2) because he is an applicant for admission. This argument is inconsistent with the Government's prior actions with respect to Petitioner's initial conditional

ORDER GRANTING HABEAS PETITION - 5

parole into the United States: he was released from initial detention, mailed a notice to appear, and placed on an order of supervision. Dkt. No. 6-4. These actions are consistent with the authority of Section 1226(a). *See, e.g.*, *Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115–16 (9th Cir. 2007). Although the Government acknowledges this shift in its interpretation of Section 1225(b), and contends that it is not currently bound by its prior treatment of Petitioner as subject to discretionary release (Dkt. No. 4 at 5–6), courts in this district and others have rejected the Government's attempt to recategorize noncitizens as subject to Section 1225(b) who were formerly released on an order of supervision under Section 1226(a). *See, e.g.*, *Rodriguez Vasquez v. Bostock*, 802 F. Supp. 3d 1297, 1333–36 (W.D. Wash. 2025).

Accordingly, for the same reasons explained in many prior cases, the Court rejects the Government's recent application of Section 1225(b)(2) to Petitioner, finding that his status as a person who has been living in this country for more than three years—the vast majority of that time not detained—counsels against this expanded view of the Immigration and Nationality Act as amended. *See, e.g.*, *Escobar Salgado v. Mattos*, 809 F. Supp. 3d 1123, 1155 (D. Nev. 2025) ("By subjecting noncitizens like Petitioners to mandatory detention, despite their significant due process rights as individuals present in the U.S., with no consideration of their deep financial, community, and familial ties in the country, the government has proffered an interpretation of a federal statute that engenders constitutional issues." (citation modified)).[2] The Government's current interpretation of Section 1225(b) is unpersuasive when the statutory scheme is read as a whole, when this subsection is read in conjunction with its implementing regulations, and when

---

[2] The Court is aware that the Fifth Circuit Court of Appeals disagrees. *See Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026). With respect to the Fifth Circuit Court of Appeals, this split decision is not binding on this Court, and is inconsistent with this Court's view of the statutory text and relevant Ninth Circuit and Supreme Court authority interpreting it.

ORDER GRANTING HABEAS PETITION - 6

the subsection is read against the backdrop of shifting agency pronouncements. *See, e.g.*, *Llanes Tellez v. Bondi*, No. 25-cv-08982-PCP, 2025 WL 3677937, at *6–8 (N.D. Cal. Dec. 18, 2025).

The Court thus finds that Petitioner was subject to Section 1226(a) when he was re-detained. The Court will thus turn to address whether, under *Mathews,* Petitioner has been afforded due process under this authority.

**B.      Petitioner Has a Protected Interest in His Liberty.**

Petitioner's interest in not being detained is "the most elemental of liberty interests[.]" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). That Petitioner was arrested and remains in custody months later undoubtedly presents a deprivation of Petitioner's interest in his liberty. The Court finds that Petitioner's interest in his liberty is constitutionally protected. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) ("[I]ndividuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty.").

Accordingly, the first *Mathews* factor favors Petitioner.

**C.      The Risk of Erroneous Deprivation Is High.**

The second *Mathews* factor considers whether a particular process results in a risk of erroneous deprivation of a protected interest, and here, the Court finds a high risk of erroneous deprivation of Petitioner's liberty interest in the absence of adequate notice of the justification for detention.

As described earlier in this order, Petitioner was arrested when he appeared for an ICE check-in appointment. The Government's contemporaneous documentation cites Petitioner's *in absentia* removal order as the reason for his detention (Dkt. No. 6-7), and a deportation officer submitted a declaration stating that Petitioner was detained "as a result of the *in absentia* removal order" (Dkt. No. 5 ¶ 6), although the Government does not explicitly rely on that justification in its briefing here. The arrest warrant states only that Petitioner is detained because he is removable

ORDER GRANTING HABEAS PETITION - 7

because he "either lacks immigration status or notwithstanding such status is removable under U.S. immigration law[.]" Dkt. No. 6-8. The warrant does not explain the reason for the revocation of Petitioner's supervision order, and where an order of supervision is revoked for unspecified reasons, the Court finds the risk of erroneous deprivation of liberty is high. *See, e.g.*, *Gunes v. Chestnut*, No. 1:26-cv-00080-JLT-SAB-HC, 2026 WL 218879, at *3 (E.D. Cal. Jan. 28, 2026), *R&R adopted*, 2026 WL 498432 (E.D. Cal. Feb. 23, 2026).

Thus, the second *Mathews* factor favors Petitioner.

**D.      The Government's Interest in Detaining Petitioner Without Process is Low.**

In applying the final *Mathews* factor, the Court considers the Government's interest in re-detaining Petitioner without process.

The Court finds that the Government's interest in re-detaining non-citizens previously released without process is "minimal": any administrative or financial burdens in providing Petitioner notice or a hearing are far outweighed by the risk of erroneous deprivation of the liberty interest at issue. *See, e.g.*, *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("If the government wishes to re-arrest Ortega at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."). The third *Mathews* factor thus favors Petitioner.

Accordingly, the Court finds that Petitioner's due process rights have been violated and turns to consider the appropriate remedy.

**E.      A Post-Deprivation Hearing Cannot Cure the Constitutional Violation.**

As noted earlier in this order, Petitioner received a bond hearing on March 4, 2026. The immigration judge found primarily that the immigration court lacks jurisdiction to set bond because Petitioner is subject to mandatory detention, and that, in the alternative, bond is denied because Petitioner is a flight risk. Dkt. No. 6-10.

ORDER GRANTING HABEAS PETITION - 8

The Government contends that this bond hearing "satisfied any due process concern." Dkt. No. 4 at 2. The Government acknowledges that in general a pre-deprivation hearing is required before the Government deprives a person of liberty, but notes that exceptions to this rule apply where a pre-deprivation hearing is impracticable. Dkt. No. 4 at 9–10 (citing *Zinermon v. Burch*, 494 U.S. 113, 127–28 (1990)). The Government posits that a pre-deprivation hearing would have been impracticable here because "[i]t is reasonable to believe that someone who had not appeared at an immigration hearing [as evidenced by the *in absentia* removal order] would then not appear at a pre-deprivation hearing if noticed with one." Dkt. No. 4 at 10.

This logic is inconsistent with the facts of this case: Petitioner missed his immigration court hearing in November 2025 for good cause[3] (as confirmed by the immigration judge who rescinded the *in absentia* order), and nonetheless appeared for his ICE check-in as scheduled the following month, and has apparently not missed any of his other ICE appointments while on supervision since 2022.

Moreover, this Court and others in this district and circuit have repeatedly found that a petitioner who misses an appointment or hearing is nonetheless entitled to a pre-deprivation hearing. *See, e.g.*, *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025); *Lnu v. Hermosillo*, C26-635-MLP, 2026 WL 691944, at *2 (W.D. Wash. March 11, 2026); *Arreaga Morales De Putul v. Hermosillo*, No. 2:26-cv-00129-GJL, 2026 WL 468637, at *3 (W.D. Wash. Feb. 19, 2026); *Bello Chacon v. Hermosillo*, No. 2:25-cv-02299-TMC, 2025 WL 3562666, at *3 (W.D. Wash. Dec. 12, 2025); *Rodriguez Diaz v. Kaiser*, No. 25-cv-05071-TLT, 2025 WL

---

[3] Petitioner states that he failed to appear for his official hearing because he was defrauded by individuals who falsely claimed to be a licensed immigration attorney and an immigration judge conducting a remote hearing. Dkt. No. 1 ¶¶ 39–42. These individuals told Petitioner that his asylum application had been approved and that he owed a $3,000 fine, and Petitioner paid $1,500 to the fraudulent attorney. *Id*. The Government does not contest Petitioner's version of events. *See* Dkt. No. 4 at 10.

ORDER GRANTING HABEAS PETITION - 9

3011852, at *10–11 (N.D. Cal. Sep. 16, 2025).[4]  The Government attempts to distinguish *E.A. T.–B.* on the grounds that Petitioner here was detained after he admittedly failed to appear for an immigration court proceeding, whereas the petitioner in *E.A. T.–B.* disputed the existence of valid violations of his release order.  Dkt. No. 4 at 11.  This argument overlooks pertinent language in *E.A. T.–B.* that does not limit its holding to situations where a petitioner disputes the existence of violations:

> [E]ven if Petitioner's arrest was not pretextual and was solely motivated by ICE's realization of his [release order] violations, it would not necessarily follow that Petitioner can be detained for those violations without a hearing.  That the Government may believe it has a valid reason to detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process.

795 F. Supp. 3d at 1322.

For those same reasons as explained in *E.A. T.–B.*, the Court finds that Petitioner was entitled to pre-deprivation notice and hearing, and that any post-deprivation remedies he has received do not cure the constitutional violation.

### III.   REMEDY

Having determined that Petitioner's re-detention violates his constitutional right to due process, the Court concludes his detention is unlawful and will grant his habeas petition.  The Court must now determine the appropriate remedy.

---

[4] The Government notes that at least one court has found a post-deprivation hearing to be sufficient under similar circumstances.  *See Gunes*, 2026 WL 218879, at *5.  In that case, a habeas petitioner had been released on her own recognizance after entering the United States without inspection, and later failed to appear for an immigration court hearing.  *Id.*, at *1.  The petitioner was then ordered removed *in absentia*, and filed a motion to reopen that was denied.  *Id.*  The petitioner appealed, and while her appeal was pending, she was detained.  *Id.*  The Eastern District of California found that the petitioner's due process rights had been violated because she was arrested without written notice or a hearing.  *Id.*, at *4.  Nonetheless, because she had an *in absentia* order of removal at the time she was detained, the court found that she was entitled to a post-deprivation hearing, rather than a pre-deprivation hearing.  *Id.*, at *4–5.  The *Gunes* court did not explain why the fact of the *in absentia* order was dispositive to the remedy determination, and the Government has not persuaded the Court to follow *Gunes* here.

ORDER GRANTING HABEAS PETITION - 10

"In habeas cases, federal courts have broad discretion in conditioning a judgment granting relief." *Lujan v. Garcia*, 734 F.3d 917, 933 (9th Cir. 2013). "Federal courts are authorized, under 28 U.S.C. § 2243, to dispose of habeas corpus matters as law and justice require." *Id*. (quoting *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987)). "Declaratory and injunctive relief are proper habeas remedies." *Perera v. Jennings*, 598 F. Supp. 3d 736, 742 (N.D. Cal. 2022).

Here, the Court finds that the appropriate remedy for Petitioner's unconstitutional re-detention is immediate release. *See Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) ("[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody."). Furthermore, as explained in this order, due process requires that Petitioner receive notice and an opportunity to be heard before he may be re-detained for alleged release violations. *See, e.g.*, *Llanes Tellez*, 2025 WL 3677937, at *9 ("If the government wishes to re-detain [Petitioner], it must provide him with the pre-detention hearing before a neutral decisionmaker required by due process."). At any future pre-deprivation hearing, the Government must demonstrate the justification for detention by clear and convincing evidence. *See Doe*, 787 F. Supp. 3d at 1089.

## IV.   CONCLUSION

For these reasons, the Court GRANTS the habeas petition. Dkt. No. 1.

The Court ORDERS that Petitioner shall be released from custody no later than **April 4, 2026**, on the terms of his most recent order of release.[5] Petitioner may not be re-detained until after a hearing is held (with adequate notice) to determine whether re-detention is appropriate. At any future pre-deprivation hearing, in order to re-detain Petitioner, the Government must

---

[5] Although the petition requests release "with no restrictions on [Petitioner's] liberty" (Dkt. No. 1 at 18) the petition does not elaborate as to why Petitioner should not be returned to the same status he enjoyed before his unlawful re-detention.

ORDER GRANTING HABEAS PETITION - 11

demonstrate by clear and convincing evidence that Petitioner is a flight risk or a danger to the community.

The Government shall file a status report no later than **April 6, 2026**, documenting Petitioner's release in compliance with this order.

The Court will entertain any post-judgment motion for attorney's fees, as requested in the petition.

Dated this 3rd day of April, 2026.

Kymberly K. Evanson
United States District Judge

ORDER GRANTING HABEAS PETITION - 12